UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JOEL RAMIREZ, individually & as successor-in-interest to Joel A. Ramirez, Jr., and GLORIA VIZCARANDO, individually & as successor-in-interest to Joel A. Ramirez, Jr., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF TULARE, MARGARET PINEDA, ERICA SOTO, ANNA ZAVALA, JAIME ZAVALA, FOSTER FAMILY HOME AND SMALL FAMILY HOME INSURANCE FUND OF THE STATE OF CALIFORNIA, DOES 1-10, <br><br> Defendant. | CIV. NO. 1:14-1414 WBS BAM <br><br> <u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS AND ORDER TO SHOW CAUSE</u> |

----oo0oo----

Plaintiffs Joel Ramirez and Gloria Vizcarando brought this action to recover for the untimely death of their son while he was under the care of foster parents Anna and Jaime Zavala.

1

Presently before the court is defendants Anna and Jaime Zavala's motion to dismiss plaintiffs' civil right claim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.  Factual and Procedural Background

Plaintiffs are the natural parents of the deceased Joel Ramirez, Jr. (First Am. Compl. ("FAC") ¶ 3.) On August 22, 2013, plaintiffs' son, then two-and-a-half years old, was removed from their home and placed under the jurisdiction of the Tulare County Superior Court, Juvenile Division. (Id. ¶ 4.) The Division placed Joel with foster parents Anna and Jaime Zavala. (Id.) Plaintiffs allege that at the time, the social worker making the placement knew that Joel was seriously ill, complaining of severe stomach problems, vomiting, and needed immediate medical attention. (Id.) According to plaintiffs, the social worker informed the Zavalas of Joel's illness. (Id. at 6.) Although the Zavalas agreed to take him to the doctor that same day, they failed to do so. (Id.) On August 25, Joel was rushed to the emergency room,[1] and he died the following day of acute ruptured appendix, acute peritonitis, septic shock, and severe dehydration. (Id. ¶ 4.)

Plaintiffs seek recovery for the wrongful death of their son, loss of consortium, and emotional distress. (Id. ¶ 2.) They bring a civil rights claim against defendants under 42 U.S.C. § 1983, alleging defendants violated the Fourteenth Amendment, as well as state law claims for negligence and breach

---

[1] Plaintiffs do not indicate who took Joel to the hospital.

2

of contract.  The Zavalas move to dismiss plaintiffs' civil rights claim on the ground that they are not state actors.  (Defs.' Mot. (Docket No. 25).)

II.  Analysis

On a Rule 12(b)(6) motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

"A § 1983 plaintiff must demonstrate . . . that the defendant acted under the color of state law," meaning "'the party charged with the deprivation must be a person who may fairly be said to be a [governmental] actor.'"  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)).  "'Section 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong.'"  Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).  "When

3

addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute governmental action." Sutton, 192 F.3d at 835 (citing Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.")).

Several appellate courts outside the Ninth Circuit have held that foster parents are not acting under the color of state law for § 1983 purposes. See, e.g., Leshko v. Servis, 423 F.3d 337, 338 (3d Cir. 2005) (holding foster parents in Pennsylvania were not state actors for the purposes of § 1983); Hafez v. Madison, 348 Fed. Appx. 465, 467 (11th Cir. 2009) ("[F]oster parents are not state actors for section 1983 purposes."). However, absent a bright-line rule from the Ninth Circuit, the court must engage in a fact-based inquiry to determine whether the Zavalas were state actors when they failed to seek medical care for Joel. See Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983) ("The extent of state involvement remains a factual inquiry."); Milburn by Milburn, 871 F.2d 474, 476 (4th Cir. 1989) (recognizing that whether foster parents are state actors is a fact-based inquiry).

"The [Supreme] Court has articulated a number of tests or factors to determine whether state action is 'significant.'" Lopez v. Dep't of Health Servs., 939 F.2d 881, 883 (9th Cir. 1991) (quoting Howerton v. Gabica, 708 F.2d 380, 382-83 (9th Cir. 1983) (collecting cases)) (alteration in original). Those tests include public function, joint action, governmental compulsion or coercion, and governmental nexus. See Kirtley, 326 F.3d at 1092.

"Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." Id.  Plaintiffs allege the Zavalas are state actors under the close nexus, governmental compulsion, and joint action tests.

### A. Nexus

State action may be found where "'there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 955 (9th Cir. 2008).  To determine whether a "close nexus" exists, courts look to factors "such as when the nominally private actor is 'controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in its management or control." Chudacoff v. Univ. Med. Ctr. of S. Nev., 649 F.3d 1143, 1150 (9th Cir. 2011) (finding a sufficiently close nexus between the state and challenged action where private physicians who were governing members of the medical staff at a public hospital acted within the scope of their employment when they engaged in the chargeable conduct).

Plaintiffs argue the court should find a close nexus between the government and the Zavalas' conduct as Joel's foster parents because the government compensates them for providing care to foster children.  (Pl.'s Opp'n at 4.)   This argument fails because financial assistance alone, even if extensive, is generally insufficient for finding a close nexus. See Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982) (holding a private school was not a state actor even though "virtually all of the school's

5

income was derived from government funding"). Similarly, "'[t]he mere fact that a business is subject to state regulation does not by itself convert its action to that of the State for purposes of the Fourteenth Amendment.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974)). Particularly pertinent to this case, the court in Leshko v. Servis held that Pennsylvania's funding and regulation of foster care is insufficient to establish a close nexus between the foster parents and the state. 423 F.3d 337, 340-41 (3d Cir. 2005). Regulation and funding, taken alone, do not establish a nexus between the County of Tulare and the Zavala's allegedly chargeable conduct in the course of acting as foster parents to Joel.

Additionally, plaintiffs argue that because the Zavalas "voluntarily assumed the duty" of seeking medical care for Joel, the court should find that their decision not to seek such care can be attributed to the state. Plaintiffs allege that the Zavalas "agreed" to seek immediate medical care for Joel. (FAC at 7.) Even if the court construed such "agreement" as a contract between the Zavalas and the County of Tulare, this still would not be sufficient for finding that a "substantially close nexus" existed between the parties. "Acts of [] private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Rendell-Baker, 457 U.S. at 840-41 (recognizing that "[a] school, like [] nursing homes, is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or

6

submarines for the government," and that those contracts alone do not support attributing private decisions to the state); Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011) (holding that the mere fact that private bus drivers entered into a contract with the government to transport public school students does not alter their status as private actors).[2]  The court thus cannot conclude that the Zavalas "agreement" to carry out an act as instructed by a state social worker established a nexus between the government and the Zavalas, such that the Zavalas' decision to delay taking Joel to the hospital could properly be fairly treated as that of the state.

### B. Governmental Compulsion

"State action may be found under the state compulsion test where the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert,

---

[2]  Under some circumstances, a private actor can become a state actor where there has been delegation.  When a state delegates to a private individual a public function that is traditionally the exclusive prerogative of the state, the individual may be acting under the color of state law in performing that function.  Rendell-Baker, 457 U.S. at 842.  However, "the activities that have been held to fall within the state's exclusive preserve for purposes of the public function test are few and far between." Santiago, 655 F.3d at 69.  Courts have held that caring for children is typically not the exclusive prerogative of the state.  See Leshko, 423 F.3d at 343-44 ("No aspect of providing care to foster children in Pennsylvania has ever been the exclusive province of the government."); Rayburn, 241 F.3d at 1347 (agreeing with the district court that foster care is traditionally not an exclusive state prerogative); Milburn by Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs., 871 F.2d 474, 479 (4th Cir 1989.) ("The care of foster children is not traditionally the exclusive province of the State."); see also Rendell-Baker, 457 U.S. at 842 (holding that education of maladjusted children who could not be served by traditional public schools was not an exclusive prerogative of the state).

1 that the [private actor's] choice must in law be deemed to be
2 that of the State." Johnson v. Knowles, 113 F.3d 1114, 1119 (9th
3 Cir. 1997). Plaintiffs do not allege the Zavalas' decision to
4 delay seeking medical care was compelled by the state, because
5 they allege the opposite: county workers encouraged the Zavalas
6 to seek medical care for Joel, but the Zavalas shirked this
7 responsibility. (FAC at 7.) The couple's choice to delay taking
8 Joel to the hospital could thus not have been encouraged overtly
9 or covertly by the state. See Leshko, 423 F.3d at 340-41
10 (finding no state action under the nexus test where the
11 plaintiffs failed to allege grounds for finding the state
12 "significantly encouraged or participated" in the foster parents'
13 decision not to seek medical attention where child was injured
14 while left sitting unattended next to a pot of hot water).

      C. Joint Action

16 Under this test, "'courts examine whether state
17 officials and private parties have acted in concert in effecting
18 a particular deprivation of constitutional rights.'" Franklin v.
19 Fox, 312 F.3d 423, 445 (9th Cir. 2002) (quoting Gallagher v. Neil
20 Young Freedom Concert, 49 F.3d 1442, 1453 (10th Cir. 1995)).
21 "The test focuses on whether the state has 'so far insinuated
22 itself into a position of interdependence with [the private
23 actor] that it must be recognized as a joint participant in the
24 challenged activity.'" Id. (quoting Gorenc v. Salt River Project
25 Agric. Improvement & Power Dist., 869 F.2d 503, 507 (9th Cir.
26 1989)). "A plaintiff may demonstrate joint action by proving the
27 existence of a conspiracy or by showing that the private party
28 was a 'willful participant in joint action with the State or its

agents.'"  Id. (quoting Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989)).  The Ninth Circuit "[has] been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights."  Id.

According to plaintiffs, "[w]hen the foster parents agreed to relieve the County of its duty to seek medical care by promising to take the child themselves to the doctor, they became 'willful participants.'"  (Pls.' Opp'n at 3.)  In this case, however, the "challenged activity" was the Zavalas' alleged transgression of the county workers' instructions.  See Am. Mfrs. Mut. Ins., 526 U.S. at 51 ("Our approach to [the question of whether the party charged with the deprivation is a state actor] begins by identifying the 'specific conduct of which the plaintiff complains.'" (quoting Blum, 457 U.S. at 1004)); Rayburn, 241 F.3d at 1348 ("[P]rivate conduct is fairly attributable only when the State has had some affirmative role . . . in the particular conduct underlying a claimant's civil right grievance." (quoting NBC, Inc. v. Commc'ns Workers of Am., AFL-CIO, 860 F.2d 1022, 1025 n.4 (1988))).  By entrusting Joel to the Zavalas' care, the county workers did not cooperate in the Zavalas' decision to ignore their recommendations and delay seeking medical attention for the child.  The Zavalas' omission was allegedly in defiance to the state's proposed course of action, which is quite the opposite of "a substantial degree of cooperation," and does not support a finding a state action under the "joint participant" test.  See Rayburn, 241 F.3d at 1348 (holding that state of Georgia was not a "joint participant" in

foster parent's child abuse because, while it does regulate foster parenting to an extent, "this relationship does not encourage or sanction child abuse in any way, and that, "[t]o the contrary, the State and DFACS specifically forbid such conduct").

Because plaintiffs have not alleged any facts from which the court could plausibly infer that the Zavalas were state actors when they failed to seek medical care for Joel, the court must grant the Zavalas' motion to dismiss plaintiffs' § 1983 claim against them.

## ORDER TO SHOW CAUSE

At the hearing on this motion, Richard Sullivan, of the law firm of Lewis Brisbois Bisgaard & Smith, appeared on behalf of the moving defendants. No appearance was made on behalf of the plaintiffs. Local Rule 230(i) provides that, "Absent notice of intent to submit the matter on the briefs, failure to appear may be deemed withdrawal of the motion or of opposition to the motion, in the discretion of the Court, or may result in the imposition of sanctions." See E.D. Cal. L. R. 230(i).

On the morning of the hearing, someone from the office of plaintiffs' attorney called the court to advise that plaintiffs' attorney, John Rozier, would not be attending the hearing because he was in Utah, but she did not state that he intended to submit the matter on the briefs. In the meantime, counsel for the moving defendants was required to attend the hearing, but because of the absence of plaintiffs' counsel was not permitted to argue.

IT IS THEREFORE ORDERED that the Zavalas' motion to

dismiss plaintiffs' § 1983 claim be, and the same hereby is, GRANTED.

Plaintiffs have twenty days from the date this Order is signed to file an amended complaint, if they can do so consistent with this Order.

IT IS FURTHER ORDERED that within ten days from the date this Order is signed, plaintiffs' counsel will show cause why sanctions should not be imposed under Local Rule 230(i).

Dated:   December 2, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE